USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/24/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PETITION OF ESTHER KIOBEL,

Petitioner,

For an Order Granting Leave to Issue Subpoenas to Cravath, Swaine & Moore LLP for Production of Documents Pursuant to 28 U.S.C. § 1782

**OPINION AND ORDER GRANTING PETITION**

16 Civ. 7992 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

On October 12, 2016, Petitioner Esther Kiobel ("Kiobel") filed a petition pursuant to 28 U.S.C. § 1782 seeking leave to issue subpoenas to the law firm Cravath, Swaine & Moore LLP ("Cravath") for the production of documents in Cravath's possession. Kiobel seeks these documents for use in an anticipated civil action that Kiobel intends to file in the Netherlands against Cravath's client, Royal Dutch Shell ("Shell") and related entities. Oral argument was held on December 20, 2016. At the hearing, I advised the parties that Kiobel's petition would be granted upon the parties' submission of a stipulation that addressed Cravath's concerns regarding the confidentiality of the documents sought. On January 13, 2017, the parties submitted a confidentiality stipulation and proposed order. For the reasons stated herein, Kiobel's petition is granted.

## BACKGROUND

In the early 1990s, Kiobel and her husband, Dr. Barinem Kiobel, were actively involved in an organization called the Movement for the Survival of the Ogoni People, which opposed Shell's activities in a region of Nigeria known as Ogoni. The Nigerian military

launched a violent campaign to suppress this opposition movement, and in 1995, Kiobel's husband was executed by the Nigerian military.

In 2002, Kiobel filed a class action lawsuit in the Southern District of New York against Shell and related entities under the Alien Tort Statute. 28 U.S.C. § 1350. Kiobel alleged that Shell and its Nigerian subsidiary were liable for gross violations of civil liberties and human rights committed by the Nigerian military against Kiobel, Kiobel's husband, and other Nigerians who opposed Shell's activities in Ogoni. Kiobel alleged that Shell was directly complicit in the execution of her husband and other opposition leaders following a rigged and corrupt criminal trial, and further alleged that she was personally whipped, sexually assaulted, and detained for three weeks when she attempted to bring her husband food during his detention prior to execution. In addition to this action, *Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618, three other lawsuits were filed in the Southern District of New York alleging Shell's complicity in the Nigerian government's campaign against the Ogoni people: *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386; *Wiwa v. Brian Anderson*, No. 01 Civ. 1909; and *Wiwa v. Shell Petroleum Development Corp. of Nigeria*, No. 04 Civ. 2665. Cravath represented Shell in each of these actions. During the course of these actions, Cravath gathered and produced numerous documents and engaged in other discovery-related activities.

In 2013, the U.S. Supreme Court dismissed the *Kiobel* action on the grounds that the Alien Tort Statute is subject to a "presumption against extraterritorial application." Applying that presumption, the Court held that Kiobel's claim could not proceed in a U.S. court because all relevant conduct had occurred outside of the United States. *See Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013).

Kiobel alleges, in the petition now before me, that she intends to file an action in the Netherlands against Shell alleging the same tortious conduct, namely, Shell's alleged involvement in the execution of her husband, as well as Shell's alleged complicity in violations of civil liberties and human rights against the Kiobels and other Nigerians who opposed Shell's activities in Nigeria in the 1990s. In anticipation of this Dutch proceeding, Kiobel seeks to obtain the documents and other discovery materials (for example, deposition transcripts) that Cravath produced on behalf of Shell and related entities in the *Kiobel* and *Wiwa* actions. Kiobel believes this discovery would advance the foreign proceeding that she intends to initiate, and that she cannot obtain such discovery in the Netherlands because Cravath is outside the jurisdictional reach of the Dutch judiciary. Kiobel contends that 28 U.S.C. § 1782 is therefore the proper mechanism to obtain this discovery.

## DISCUSSION

### I. Statutory Requirements

To prevail in a Section 1782 petition, a petitioner must first satisfy three statutory requirements: "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or 'any interested person.'" *In re Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996). Cravath concedes that the third requirement has been satisfied, but contends that Kiobel has failed to satisfy the first two requirements.

#### *a. The First Statutory Requirement is Satisfied*

Under the first statutory requirement, the person from whom discovery is sought must reside in the district where the application is made. There is no dispute that Kiobel seeks discovery from Cravath, and that Cravath resides in the Southern District of New York. Cravath, however, argues that it is not the real "person from whom discovery is sought" because it is

merely a custodian of documents that belong to Shell. Cravath suggests that the "real" person from whom discovery is sought is Shell, an entity that does not reside in this district. Consequently, Cravath argues, the first statutory element has not been met.

No authority supports this argument. To credit Cravath's argument would effectively exempt many law firms from having to respond to Section 1782 petitions. Cravath has made this argument before, without success. In *In re Application of Schmitz*, 259 F. Supp. 2d 294 (S.D.N.Y. 2003), Cravath argued that the first statutory requirement had not been satisfied because it was the custodian of documents "solely for the purposes of the U.S. Litigation," and that the true owner of the documents was its foreign client. The district court rejected the argument: "That argument is creative, but sails far wide of the mark. Application of section 1782 does not involve an analysis of ... why a respondent has the documents. It is sufficient that respondents reside in this district, as they concededly do." *Id.* at 296. The Second Circuit did not disturb this ruling. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 83 (2d Cir. 2004).[1] Other courts are in accord. *See In re Mare Shipping Inc.*, 2013 WL 5761104, at *3 (S.D.N.Y. Oct. 23, 2013) ("Courts in this district have found that for purposes of a section 1782 claim, it is sufficient that a respondent law firm resides in this district, even if the real party in interest, the client, resides elsewhere."); *In re Republic of Kazakhstan,* 110 F. Supp. 3d 512, 514 (S.D.N.Y. 2015) (granting Section 1782 petition seeking documents from law firm representing international client).

The question is whether Cravath is in possession of the documents, not whom the documents "belong" to. Unless a court instructs otherwise, document productions made in

---

[1] As the Second Circuit has recognized, the fact that a respondent represents a foreign client that is a party to the foreign proceeding is certainly a fact worth considering. *See Schmitz*, 376 F.3d at 85. Here, it is appropriate to consider that Cravath possesses these documents as a result of its prior representation of Shell, and that Shell will be named as a defendant in the foreign proceeding. However, as the Second Circuit's analysis in *Schmitz* makes clear, these facts are relevant to the first discretionary factor, not the first statutory requirement. *Id.*

response to a Section 1782 petition are governed by the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1782(a). Under those rules, relevant documents within the "possession, custody, or control" of the recipient of a discovery request are generally discoverable, regardless of who owns or created those documents. *See, e.g.*, Fed. R. Civ. P. 34(a)(1); 45(1)(A)(iii). This is true notwithstanding Cravath's attorney-client relationship with Shell. "[D]ocuments held by an attorney in the United States on behalf of a foreign client, absent privilege, are as susceptible to subpoena as those stored in a warehouse within the district court's jurisdiction. Documents obtain no special protection because they are housed in a law firm; '[a]ny other rule would permit a person to prevent disclosure of any of his papers by the simple expedient of keeping them in the possession of his attorney.'" *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170–71 (2d Cir. 2003) (quoting *Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962)). Here, there is no concern that privileged materials will be disclosed because Kiobel seeks only documents that Cravath has previously produced, which therefore have already been vetted for privilege.

Thus, the first statutory requirement has been satisfied.

***b. The Second Statutory Requirement is Satisfied***

Under the second statutory requirement, the discovery sought must be "for use" in a foreign proceeding. "A § 1782 applicant satisfies the statute's 'for use' requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding." *Mees v. Buiter*, 793 F.3d 291, 295 (2d Cir. 2015). Cravath argues that Kiobel has failed to satisfy this element because she has yet to commence an action against Shell in the Netherlands, and the representation that she "expects" to file the action shortly is too speculative to warrant discovery pursuant to Section 1782.

In situations such as this, where there is no pending foreign proceeding, the "for use" requirement is still satisfied if the foreign proceeding is within "reasonable contemplation."

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004) (foreign proceeding must "be within reasonable contemplation," but need not be "pending" or "imminent."). To demonstrate that the action is within reasonable contemplation, a petitioner "must provide some objective indicium that the action is being contemplated. … At a minimum, a § 1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG LLP*, 798 F.3d 113, 123-24 (2d Cir. 2015).

Kiobel has provided objective indicia demonstrating that the Dutch proceeding is within reasonable contemplation. Dutch counsel has (1) drafted a writ of summons, which is the initiating document in Dutch proceedings; (2) applied for and obtained legal aid on behalf of Kiobel from the Dutch Legal Aid Board, which required a showing that meaningful steps had been taken to prepare for the action; and (3) sent "liability letters" to Shell, which had the effect of tolling the statute of limitations. *See* Samkalden Reply Decl. ¶¶ 3-6. This case is therefore distinguishable from *Certain Funds*, in which the petitioner had done nothing more than retain counsel and discuss "the possibility of initiating litigation." 798 F.3d at 124.

Kiobel further emphasizes that in the Netherlands, a plaintiff must present a certain amount of evidence at the outset of the action in order to proceed. Given that Kiobel seeks discovery from Cravath in order to collect evidence that may be necessary for the Dutch action to survive, the fact that Kiobel has yet to commence the action is both defensible and logical. In this sense, Kiobel's filing of this petition is itself an important step in preparing for the Dutch action, and helps to show that the action is within reasonable contemplation. In *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262 (11th Cir. 2014), the Eleventh Circuit held that the "for use" requirement was met in light of petitioner's "facially legitimate and detailed explanation of its ongoing investigation, its intent to commence a civil action against its former employees, and the valid

reasons for [petitioner] to obtain the requested discovery under the instant section 1782 application before commencing suit." *Id.* at 1271. Here, Kiobel has offered valid reasons for delaying the Dutch proceeding until after it obtains discovery from Cravath.

Thus, the second statutory requirement has also been satisfied.

## II. Discretionary Factors

Once the statutory requirements are met, as they are here, "a district court may grant discovery under § 1782 in its discretion." Mees, 793 F.3d at 297.

In assessing whether or not to exercise that discretion, a court must consider four discretionary factors: "(1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'" *Id.* at 298 (2d Cir. 2015) (quoting *Intel*, 542 U.S. at 264–265). A court must also consider the "twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 297–98 (internal quotation marks and citation omitted).

### *a. The First Discretionary Factor Weighs in Favor of Granting the Petition*

Under the first discretionary factor, a court is to consider whether "the person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 264. On a technical level, the discovery is sought from Cravath, which is not, and is not expected to become, a party to the Dutch proceeding. However, Cravath again argues that

Kiobel is "effectively" seeking discovery from Shell, which will be a defendant in the anticipated Dutch litigation. For all intents and purposes, Cravath argues, Kiobel seeks discovery from a Dutch entity for use against that same Dutch entity in a Dutch proceeding. In such situations, the need for assistance via Section 1782 "is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.*

Although courts have rejected this argument with respect to the first *statutory* factor, courts have been more receptive to it when considered in the context of the first *discretionary* factor. For example, in *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79 (2d Cir. 2004), a German petitioner sought discovery from Cravath, which represented a German client in U.S. litigation, for use in a German proceeding against that same German client. The Second Circuit noted that "although technically the respondent in the district court was Cravath, for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation. *Intel* suggests that because DT is a participant in the German litigation subject to German court jurisdiction, petitioner's need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" *Schmitz*, 376 F.3d at 85 (quoting *Intel*, 542 U.S. at 264). Similarly, in *Mare Shipping*, the court reasoned that the "first factor … does not weigh in favor of granting the application" because although "the named Respondents are not party to a foreign action, Spain, respondent's client, is a participant in the foreign proceeding." 2013 WL 5761104, at *4. *See also In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) (denying petition on discretionary grounds where respondent was parent company of foreign defendant because "discovery is fundamentally being sought from a participant in the [foreign] proceeding.").

Cravath contends that these cases show that the first factor weighs against granting this petition because the documents are best obtained directly from Shell in the Dutch proceeding. However, the question of whether the respondent is a party to the foreign proceeding is not the only relevant consideration. Rather, the respondent's connection to the foreign proceeding is part of a broader inquiry: whether the discovery is "outside the foreign tribunal's jurisdictional reach," and thus "unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. In *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006), for example, the court described the first *Intel* prong as "whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid." If a law firm's client is party to the foreign proceeding, then the documents are presumably within the foreign tribunal's reach, and assistance via Section 1782 is presumably unnecessary. But as this case illustrates, that is not always the case. Thus, "[i]t is the foreign tribunal's ability to control the evidence and order production, not the nominal target of the Section 1782 application, on which the district court should focus." *In re Application of OOO Promnefstroy*, 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009).

Here, Shell may be in possession of some of the documents Kiobel seeks, but there are several reasons why the discovery may not be obtainable "absent § 1782 aid." First, as discussed above, the Dutch action cannot proceed unless Kiobel presents sufficient evidence at the outset. Kiobel seeks documents from Cravath in order to collect evidence prior to filing suit. Absent that discovery, Kiobel's contemplated action may be foreclosed before there is any opportunity to obtain this discovery directly from Shell in the Dutch proceeding. Second, even if Kiobel was able to obtain discovery from Shell in the Dutch proceeding, not all of the materials that Kiobel seeks are likely to be in Shell's possession. For example, Kiobel is particularly

interested in obtaining deposition transcripts, which Shell may not possess. Kiobel has also represented that in other litigation Kiobel's Dutch counsel has brought against Shell arising out of Shell's activities in Nigeria during the 2000s, Shell has represented that it is no longer in possession of many requested documents. Samkalden Reply Decl. ¶ 9. Since Kiobel's action arises out of conduct that occurred in the 1990s, Kiobel believes Cravath may be the only source for some of these documents.

Section 1782 assistance may not be warranted in all situations where the respondent is a law firm representing a foreign client that is a defendant in the foreign proceeding. However, on balance, under the particular circumstances of this case, this factor weighs in favor of granting the petition because these documents may be unobtainable absent Section 1782 aid.

***b. The Second Discretionary Factor Weighs in Favor of Granting the Petition***

Under the second discretionary factor, a court is to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. In evaluating this factor, courts "should consider only *authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (emphasis added). Cravath, as the party opposing the application, "bears the burden of proving the non-receptivity of the foreign tribunal." *In re Application of Gorsoan Ltd*, 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014) (citing *In re Esses,* 101 F.3d 873, 876 (2d Cir. 1996)).

Cravath offers no authoritative proof that the Dutch courts are unreceptive to receiving assistance pursuant to Section 1782. Cravath points out that when the *Kiobel* case was

before the U.S. Supreme Court, the Government of the Netherlands submitted an amicus brief in which it argued that U.S. courts should not interfere with its right to adjudicate disputes among its own nationals. In so arguing, the Netherlands expressed concern over American "plaintiff-favoring rules," including "the generally broader discovery available to plaintiffs in the U.S." Moskowitz Decl., Ex. A at 27. This is not authoritative proof that the Netherlands is unreceptive to Section 1782 discovery. Such proof is typically "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (internal quotations omitted). The amicus brief referenced by Cravath addressed whether Kiobel's claim should be heard in a U.S. court, but it did not discuss Section 1782 or otherwise address whether Dutch courts accept evidence "gathered under foreign procedures." It is therefore not an authoritative declaration that Dutch courts are hostile to receiving discovery pursuant to statutes such as Section 1782.

The other cases relied upon by Cravath only further illustrate that "where courts have found that analysis of the second *Intel* factor weighs against a Section 1782 discovery request, evidence demonstrating the non-receptiveness of the foreign tribunals to U.S. discovery has been explicit." *Gorsoan*, 2014 WL 7232262, at *7. In *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006), for example, the court denied the petition because the European Commission had "explicitly stated that it opposes the discovery sought by Microsoft and is not receptive to U.S. judicial assistance." Similarly, in *Schmitz*, 376 F.3d 79, 84 (2d Cir. 2004), the German Ministry of Justice sent "specific requests" to the district judge that the petition be denied.

The Netherlands has done nothing of the sort here. On the contrary, in *Mees v. Buiter*, a fairly recent case in which the petitioner sought documents for use in a Dutch proceeding, the Second Circuit noted that the respondent did "not contend that Dutch courts reject the use in litigation of materials obtained through § 1782." 793 F.3d at 303 n.20.

Thus, this factor also weighs in favor of granting the petition.

***c. The Third Discretionary Factor Weighs in Favor of Granting the Petition***

Under the third discretionary factor, courts must consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264. Importantly, this factor does not impose a "foreign-discoverability requirement." *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015). As the Second Circuit recently summarized, "there is no requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding." *Gorsoan Ltd. v. Bullock*, 652 F. App'x 7, 9 (2d Cir. 2016). Imposing a "foreign-discoverability rule" would "serve only to thwart § 1782(a)'s objective to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Intel*, 542 U.S. at 261–62.

Similarly, a petitioner need not demonstrate that it attempted to obtain the discovery in the foreign tribunal before filing a Section 1782 petition. *See Mees*, 793 F.3d at 303 (there is "no support in the plain language of the statute" for a "quasi-exhaustion requirement.") (quoting *In re Metallgesellschaft*, 121 F.3d 77, 79 (2d Cir. 1997)); *In re Application of Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 167 (S.D.N.Y. 2016) ("Bloomfield's failure to exhaust discovery procedures in the Netherlands Action is not a basis on which to reject

Bloomfield's discovery request."); *Gorsoan*, 2014 WL 7232262, at *9 (a "§ 1782 applicant need not exhaust foreign discovery remedies. Requiring Petitioner to wait for the outcome of the ... discovery proceedings would amount to enforcing such an 'exhaustion' requirement.").

Cravath argues that Kiobel filed this petition in order to avoid a potentially unfavorable discovery ruling from the Dutch court. However, accepting this argument would require Kiobel to refrain from filing this petition until after it first tried to obtain this discovery in the Netherlands. This effectively imposes an exhaustion requirement, which the Second Circuit has rejected. *Mees*, 793 F.3d at 303.

The proper inquiry is not whether a Dutch court would grant the discovery Kiobel seeks here, but whether the Dutch judiciary imposes a proof-gathering restriction or some other prohibition that precludes use of these materials in the Dutch proceeding. As the Second Circuit explained in *Mees*, that "a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means. 'Proof-gathering restrictions' are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." 793 F.3d at 303 n.20. Thus, a foreign tribunal may "limit discovery within its domain for reasons peculiar to its own legal practices," but this does "not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261.

Here, Cravath has provided no evidence that the Netherlands prohibits or otherwise restricts parties from gathering evidence via Section 1782. Thus, this factor weighs in favor of granting the petition.

***d. The Fourth Discretionary Factor Weighs in Favor of Granting the Petition***

The final discretionary factor to consider is whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 245. Cravath's burden is extremely minimal because it has previously produced all of the documents currently sought, and probably retained separately bundled copies of the productions it made. No additional collection or review is likely to be required.

Many of the arguments that Cravath initially raised with respect to burden have since been amicably resolved by the parties. Regarding the scope of the production, which Cravath argued was overbroad, Kiobel has agreed to limit its request to: (a) documents produced by the defendants in the *Kiobel* and *Wiwa* actions; and (b) deposition transcripts of the defendants' witnesses in those same actions. Cravath also initially argued that providing the documents would be unduly intrusive absent a mechanism to ensure that the documents' confidentiality is maintained. However, the parties have since stipulated to a confidentiality agreement, which renders this issue moot.

Cravath's remaining argument with respect to burden is unpersuasive. Cravath argues that the documents might be subject to "other privileges governed by Dutch law," and that if the petition is granted, Cravath would have to conduct a "substantial and complex review" of the documents to ensure compliance with applicable foreign privileges. This argument is speculative. Absent "authoritative proof" of a "violation of the alleged privilege," a court should not refrain from granting a petition. *In re Metallgesellschaft*, 121 F.3d 77, 80 (2d Cir. 1997). Here, Cravath identifies no specific foreign privilege, let alone authoritative proof that production of the documents would violate that privilege, necessitating additional review prior to production.

Thus, the fourth and final discretionary factor weighs in favor of granting the petition.

## CONCLUSION

For the foregoing reasons, and upon entry of the Stipulation and Order Regarding Confidentiality of Discovery Materials dated January 13, 2017, it is hereby:

ORDERED that the Petition of Esther Kiobel, Pursuant to 28 U.S.C. § 1782, for Leave to Issue Subpoenas to Cravath, Swaine & Moore LLP for the Production of Documents for Use in a Foreign Proceeding is granted;

ORDERED that Kiobel is authorized to issue a subpoena consistent with her submissions and counsel's and the Court's statements at the December 20, 2016, oral argument;

ORDERED that Kiobel shall serve the subpoena by January 27, 2017, and Cravath shall produce the responsive documents by February 27, 2017.

The Clerk shall mark the case closed.

SO ORDERED.

Dated: January 24, 2017
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge