UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PETITION OF ESTHER KIOBEL,

                                        Petitioner,

For an Order Granting Leave to Issue Subpoenas to Cravath, Swaine & Moore LLP for Production of Documents Pursuant to 28 U.S.C. § 1782

No. 1:16-cv-07992 (AKH)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CRAVATH, SWAINE & MOORE LLP'S MOTION TO STAY THE COURT'S ORDER GRANTING PETITIONER ESTHER KIOBEL LEAVE TO ISSUE A SUBPOENA PURSUANT TO 28 U.S.C. § 1782**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Respondent Cravath, Swaine & Moore LLP*

February 23, 2017

## TABLE OF CONTENTS

                                                                                                                                 **Page**

TABLE OF AUTHORITIES .................................................................................................... iii

CITATION CONVENTIONS ..................................................................................................... v

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

I.     Cravath Has Shown That It Will Suffer Irreparable Injury Absent a Stay. .............. 2

II.    Petitioner Articulates No Plausible Risk of Harm—Let Alone Substantial Injury. .................................................................................................................... 3

III.   Cravath Has Shown a Likelihood of Success on Appeal. ........................................ 4

IV.   The Public Interest Cuts in Favor of a Stay. .......................................................... 10

CONCLUSION ........................................................................................................................... 11

## TABLE OF AUTHORITIES

                                                                                                **Page(s)**

**Cases**

*In re Accent Delight Int'l*,
    No. 16-3655 (2d Cir. 2016) ................................................................................... 2, 5

*In re Agent Orange Prod. Liab. Litig.*,
    804 F.2d 19 (2d Cir. 1986) ........................................................................................ 2

*In re Application of Chevron Corp.*,
    No. 10-1918 (2d Cir. 2010) ....................................................................................... 2

*In re Application of Procter & Gamble Co.*,
    334 F. Supp. 2d 1112 (E.D. Wis. 2004) ................................................................... 1

*In re Application of Schmitz*,
    259 F. Supp. 2d 294 (S.D.N.Y. 2003) ...................................................................... 6

*In re Bank of Cyprus Pub. Co. Ltd.*,
    No. 10 Misc. 23, 2011 WL 223168 (S.D.N.Y. Jan. 21, 2011) ................... 5, 6, 8, 9

*In re Gushlak*,
    No. 11-MC-218, 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012) ............................. 1

*In re Application Pursuant to 28 U.S.C. § 1782 of Okean B.V. & Logistic Sol.*
    *Int'l to Take Discovery of Chadbourne & Parke LLP*,
    60 F. Supp. 3d 419 (S.D.N.Y. 2014) ........................................................................ 8

*In re Certain Funds, Accounts and/or Investment Vehicles v. KPMG, LLP*,
    798 F.3d 113 (2d Cir. 2015) ......................................................................... 5, 7, 9, 10

*Intel Corp. v. Advanced Micro Devices Inc.*,
    542 U.S. 241 (2004) ............................................................................................. 8, 9

*Jock v. Sterling Jewelers, Inc.*,
    738 F. Supp. 2d 445 (S.D.N.Y. 2010) .................................................................. 4, 6

*Kiobel v. Royal Dutch Petroleum Co.*,
    133 S. Ct. 1659 (2013) ............................................................................................ 10

*Krizek v. Cigna Group Ins.*,
    345 F.3d 91 (2d Cir. 2003) ..................................................................................... 10

*In re Letters Rogatory from Tokyo Dist.*,
    539 F.2d 1216 (9th Cir. 1976) .................................................................................. 1

*In re Mare Shipping*,
    2013 WL 5761104, *3 (S.D.N.Y. Oct. 23, 2013), *aff'd sub nom.*, *Mare
    Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6 (2d Cir. 2014) ..............................6

*Nat'l Res. Def. Council, Inc. v. U.S. Food and Drug Admin.*,
    884 F. Supp. 2d 108 (S.D.N.Y. 2012).................................................................................4

*Nken v. Holder*,
    556 U.S. 418 (2009).............................................................................................................4

*Process Am, Inc. v. Cynergy Holdings, LLC*,
    839 F.3d 125 (2d Cir. 2016).................................................................................................10

*Republic of Ecuador v. Bjorkman*,
    No. 11-cv-01470, 2012 U.S. Dist. LEXIS 171087 (D. Colo. Nov. 30, 2012)............................1

*In re ROZ Trading Ltd.*,
    No 1:06-cv-02305, 2007 WL 120844 (N.D. Ga. Jan. 11, 2007) ...............................................1

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004)..........................................................................................5, 6, 7, 8

*In re World Trade Ctr. Disaster Site Litig.*,
    503 F.3d 167 (2d Cir. 2007)...............................................................................................3, 4, 5

**Statutes & Rules**

28 U.S.C. § 1782................................................................................................................ passim

# CITATION CONVENTIONS

**Parties and Entities**

"Petitioner":  Esther Kiobel

"Cravath":  Cravath, Swaine & Moore LLP

"Shell":  Royal Dutch Shell plc and certain predecessors and non-U.S. affiliates of Royal Dutch Shell plc

**Pleadings and Orders**

"1782 Reply Br.":  Petitioner's Reply Memorandum of Law in Support of the Application of Esther Kiobel, Pursuant to 28 U.S.C. § 1782, for Leave to Issue Subpoenas to Cravath, Swaine & Moore LLP for the Production of Documents for Use in a Foreign Proceeding, dated November 14, 2016 (Dkt. No. 10)

"Moskowitz 2/13/17 Decl.":  Declaration of Lauren A. Moskowitz in Support of Cravath, Swaine & Moore LLP's Motion to Stay the Court's Order Granting Petitioner Esther Kiobel Leave to Issue a Subpoena Pursuant to 28 U.S.C. § 1782, dated February 13, 2017 (Dkt. No. 25)

"Mot. to Stay Br.":  Respondent's Memorandum of Law in Support of Cravath, Swaine & Moore LLP's Motion to Stay the Court's Order Granting Petitioner Esther Kiobel Leave to Issue a Subpoena Pursuant to 28 U.S.C. § 1782, dated February 13, 2017 (Dkt. No. 24)

"Mot. to Stay Opp'n Br.":  Petitioner's Memorandum of Law in Opposition of Cravath, Swaine & Moore LLP's Motion to Stay the Court's Order Granting Petitioner Esther Kiobel Leave to Issue a Subpoena Pursuant to 28 U.S.C. § 1782, dated February 16, 2017 (Dkt. No. 27)

"Order": Opinion and Order Granting Petition, dated January 24, 2017 (Dkt. No. 21)

"Samkalden 10/4/16 Decl.":  Declaration of Channa Samkalden, Attorney-at-law in the Netherlands, dated October 4, 2016 (Dkt. No. 4-4)

"Samkalden 11/14/16 Decl.":  Reply Declaration of Channa Samkalden, Attorney-at-law in the Netherlands, dated November 14, 2016 (Dkt. No. 10-2)

"Samkalden 2/16/17 Decl.":  Supplemental Declaration of Channa Samkalden, Attorney-at-law in the Netherlands, dated February 16, 2017 (Dkt. No. 27-2)

Respondent Cravath, Swaine & Moore LLP ("Cravath") respectfully submits this Reply Memorandum of Law in further support of its motion to stay the Court's January 24, 2017 Order granting Petitioner Esther Kiobel ("Petitioner") leave to issue a subpoena on Cravath pursuant to 28 U.S.C. § 1782.

**PRELIMINARY STATEMENT**

Cravath has raised substantial grounds for appeal, including important questions of first impression regarding the proper scope of Section 1782 on which courts in this District disagree. But Cravath's success would be a hollow victory absent a stay. Though Petitioner sat on her rights for years, she suddenly now asserts she will present Shell's documents to a Dutch Court "as soon as possible" and while Cravath's appeal is pending. That effectively would deny Cravath its right to relief on appeal. Documents filed with a Dutch court would be beyond the power of the Second Circuit, leaving Cravath with no way to vindicate its rights.

The stay Cravath requests is modest. Cravath already has undertaken to preserve the documents at issue. It has agreed to seek expedited consideration from the Second Circuit if a stay is granted. And, in sharp contrast to the cases Petitioner cites, Petitioner faces no looming harm if a stay is granted.[1] On the contrary, Petitioner can articulate no prejudice *at all* that

---

[1] Mot. to Stay Opp'n Br. 3. In each case Petitioner cites, the petitioner had a concrete, immediate need for the documents to avoid irreparable injury in the ongoing proceeding. *See In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1117 (E.D. Wis. 2004) (denying stay where petitioner faced "fast approaching deadlines in the foreign action" and likely would suffer irreparable harm if the discovery was unavailable); *In re ROZ Trading Ltd.*, No 1:06-cv-02305, 2007 WL 120844, at *3 (N.D. Ga. Jan. 11, 2007) (risk of prejudice arising from arbitral panel issuing decision prior to receiving requested evidence); *Republic of Ecuador v. Bjorkman*, No. 11-cv-01470, 2012 U.S. Dist. LEXIS 171087, at *3 (D. Colo. Nov. 30, 2012) (upcoming deadline in foreign proceeding would prevent petitioner from presenting requested evidence); *In re Gushlak*, No. 11-MC-218, 2012 WL 1514824, at *4 (E.D.N.Y. Apr. 30, 2012) (marital dispute where any delay in production "expand[ed] the opportunity for [the respondent spouse] to hide his assets"); *see also In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216 (9th Cir. 1976)

would result from a stay. Instead, the serious issues that Cravath raises and the acute risk of irreparable harm weigh decisively in favor of a stay—a remedy the Second Circuit grants routinely in appeals from grants of Section 1782 petitions. (Mot. to Stay Br. 2 (citing *In re Accent Delight Int'l*, No. 16-3655, Dkt. Nos. 37, 65 (2d Cir. 2016); *In re Application of Chevron Corp.*, No. 10-1918, Dkt. Nos. 50, 187 (2d Cir. 2010))). The motion should be granted and this Court's Order stayed.

## ARGUMENT

**I.  CRAVATH HAS SHOWN THAT IT WILL SUFFER IRREPARABLE INJURY ABSENT A STAY.**

As Cravath explained in its opening brief (Mot. to Stay Br. 4-6), its ability to vindicate its interests on appeal will be significantly and irreparably prejudiced if it is compelled to turn over the documents before the Second Circuit has rendered a decision. With no practical ability to protect its client's documents, a victory on legal principle alone would be cold comfort.

The Court should not ignore Petitioner's insistence—however incredible after years of delay—that she intends to present Shell's documents to a Dutch court "as soon as possible" and while Cravath's appeal is pending. (Mot. to Stay Opp'n Br. 10; Samkalden 2/16/17 Decl. ¶ 2.) The Second Circuit's power to fashion an effective remedy and Cravath's ability to enforce its rights under the stipulated confidentiality order will be extinguished if she does. *Cf. In re Agent Orange Prod. Liab. Litig.*, 804 F.2d 19, 20 (2d Cir. 1986) (declining to lift a stay where doing so would deprive appellant of effective review). This is not a case in which an after-the-fact remedy could be fashioned.

---

(involving a request for "expeditious" action by the Japanese government pursuant to an existing agreement between the United States and Japan).

2

Petitioner does not dispute that a Dutch court could discuss the contents of these documents in public proceedings or in its publicly available disposition of some future case. Nor does Petitioner dispute that Cravath would have no way of seeking confidential treatment of these documents directly from a Dutch court. Nor does she dispute the fact that the Second Circuit would have no power to compel that court to return the documents to Cravath. All Petitioner can say is that if Cravath prevails, she is willing to "request" that the Dutch court that winds up presiding over her suit return the documents and agree not to rely on them. (Mot. to Stay Opp'n Br. 10.) The Dutch court obviously will have no obligation to do so. And Cravath cannot be expected to rely on Petitioner—who after all will be suing Cravath's client—to adequately represent Cravath's interests in a foreign court.

## II. PETITIONER ARTICULATES NO PLAUSIBLE RISK OF HARM—LET ALONE SUBSTANTIAL INJURY.

Against the real and immediate risk to Cravath's ability to vindicate its interests on appeal, Petitioner offers no risk of harm to her if a stay were granted. Petitioner cannot explain why allowing an expedited appeal to run its course—while Cravath preserves the documents at issue—meaningfully "delays" a potential suit Petitioner willingly has waited nearly *four years* to bring. Petitioner has not exactly moved expeditiously to pursue proceedings in a Dutch court, and she certainly has not shown that a delay would "substantially injure" her in any way. *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

There is no looming deadline (or any deadline at all) in the yet-to-be-filed Dutch lawsuit that would require Shell's documents prior to the resolution of the appeal. Petitioner suggests that Shell might raise a statute of limitations defense. (Mot. to Stay Opp'n Br. 15; Samkalden 2/16/17 Decl. ¶ 3.) But Petitioner's Dutch counsel has explained that the "liability letters" she sent Shell in 2013 "serve[] to interrupt a limitation period". (Samkalden 11/14/16

3

Decl. ¶ 4; *see also* Mot. to Stay Opp'n Br. 15.) Petitioner reiterates her position here that she "does not think her claims are time-barred in the Netherlands". (Mot. to Stay Opp'n Br. 15.) Ms. Samkalden's declaration submitted with Petitioner's opposition says only that Petitioner "fears" that if she does not file her proposed Dutch action "as soon as possible", there may be unspecified "unforeseen complications" (Samkalden 2/16/17 Decl. ¶ 2), and that Shell made a "myriad of procedural arguments" in an unrelated case (*id.* ¶ 3). These vague statements do not even identify an injury, let alone explain how that injury would be precipitated by a modest stay—not approaching the many years that Petitioner has delayed in taking action. Petitioner should not be able to benefit from her own lengthy delay. This factor favors granting Cravath's motion.[2]

### III. CRAVATH HAS SHOWN A LIKELIHOOD OF SUCCESS ON APPEAL.

Contrary to Petitioner's suggestion, this Court need not revisit its decision in this case to find a stay is warranted. (Mot. to Stay Opp'n Br. 4.) Cravath's opening brief identified four separate grounds for appeal—two of them issues of first impression. (Mot. to Stay Br. 9-12.) Where an appellant raises questions of first impression on which "the Court of Appeals may disagree" with the district court, "that reason alone" establishes that the appellant has "sufficiently demonstrated a likelihood of success on the merits". *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010). Indeed, the Second Circuit granted a stay just a few

---

[2] Petitioner attempts to avoid the necessary conclusion that flows from her failure to show any risk of harm by arguing "there is no need to even consider" this factor (or the public interest) unless Cravath demonstrates a likelihood of success and irreparable harm. (Mot. to Stay Opp'n Br. 4.) Not so. While the Supreme Court has observed that the first two factors are the "most critical" in *Nken v. Holder*, 556 U.S. 418, 434 (2009), it has not suggested that courts should alter their "typical[]" practice of evaluating all of the factors in the totality of the circumstances on a "sliding scale", *Nat'l Res. Def. Council, Inc. v. U.S. Food and Drug Admin.*, 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012); *see also In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170 (explaining that "more of one [factor] excuses less of the other").

4

months ago in a case similarly involving a question of first impression regarding the correct interpretation of one of Section 1782's statutory factors. *In re Accent Delight Int'l*, No. 16-3655, Dkt. No. 12-22, at 10-12 (2d Cir. 2016) (identifying the questions of first impression). Petitioner does not deny that issues of first impression weigh in favor of a stay; instead, she denies any are present here. (Mot. to Stay Opp'n Br. 6.) Petitioner is wrong. And none of Petitioner's arguments on the remaining questions detracts from the "strong showing" that Cravath is likely to succeed on appeal. *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170.

*First*, the Second Circuit has not yet decided whether Section 1782's requirement that the respondent "resides or is found in the district" can be satisfied where a petitioner seeks a foreign entity's documents from local counsel and where the foreign entity is not itself "found" in the district. (*See* Mot. to Stay Br. 10-11.) That is a matter of statutory interpretation, subject to review *de novo*. *See In re Certain Funds, Accounts and/or Investment Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015).

Petitioner maintains that this question was resolved in *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004) ("*Schmitz II*"). (Mot. to Stay Opp'n Br. 6.) Petitioner is incorrect. The Second Circuit's decision in that case affirmed the district court's denial of a Section 1782 petition on *discretionary* grounds. *Schmitz II*, 376 F.3d at 85. Whether the Second Circuit agreed with the district court's assessment of the statutory factors or not (it did not say), that made no difference to the judgment on appeal. That is why Judge Keenan could cite *Schmitz*'s discussion of the discretionary factors in the same paragraph where he explained that documents "physically located" at a law firm in the Southern District were nevertheless in substance sought from "persons" who resided in New Jersey. *In re Bank of Cyprus Pub. Co. Ltd.*, No. 10 Misc. 23, 2011 WL 223168, at *2 (S.D.N.Y. Jan. 21, 2011).

5

Petitioner fares no better in her effort to deny the intra-district conflict on this question. The district court in *Schmitz* held that Section 1782 requires only that the express target of a petitioner's subpoena reside in the district. *In re Application of Schmitz*, 259 F. Supp. 2d 294, 296 (S.D.N.Y. 2003) ("*Schmitz I*"); *accord In re Mare Shipping*, 2013 WL 5761104, *3 (S.D.N.Y. Oct. 23, 2013), *aff'd sub nom.*, *Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6 (2d Cir. 2014). Although "for all intents and purposes," the *Schmitz* petitioners were "seeking discovery from" a foreign company, *Schmitz II*, 376 F.3d at 85, the district court dismissed that as irrelevant to the statutory question, *Schmitz I*, 259 F. Supp. 2d at 296-97. The district court in *Bank of Cyprus* held the opposite. It denied a Section 1782 petition seeking documents from a New York law firm where the documents belonged to the firm's New Jersey clients on the grounds that "[t]he most fair and efficient course of action is for the court which has jurisdiction over the true 'person from whom discovery is sought'" to decide the matter. *Bank of Cyprus*, 2011 WL 223168, at *3.[3] That basic disagreement goes to the heart of the question in this case and demonstrates a substantial question for appeal. Shell's documents may be physically located in New York, but "[t]here is no real dispute that the 'person[]' from whom discovery is sought", *id.*, is Shell.

This case thus presents an issue that the Second Circuit has yet to decide and on which reasonable jurists may disagree. *Cf. Jock*, 738 F. Supp. 2d at 447. Neither of Section 1782's twin aims of "providing efficient means of assistance" and "encouraging foreign

---

[3] Petitioner's characterization of the law firm's stipulation that it would comply with the District of New Jersey court's order in the petition against its client as a factor in the *Bank of Cyprus* court's decision is undercut by the court's observation that the stipulation was merely consistent with "the law's general recognition that documents in the possession of a party's attorney are deemed to be within the party's possession, custody, or control". 2011 WL 223168 at *3 n.1. The court's true principal concern was whether "the true party at interest" resided within the district; because the party did not, it denied the petition. *Id*. at *3.

6

countries by example", *Certain Funds*, 798 F.3d at 117, would be well served by permitting plaintiffs to circumvent foreign discovery procedures by obtaining a foreign defendant's documents from its U.S.-based counsel. And the downside, including the chilling effect such a rule would have on local firms' ability to serve foreign clients and on foreign entities' willingness to comply with U.S. discovery obligations, is potentially enormous.

*Second*, the Second Circuit expressly reserved decision on the question of whether Section 1782 reaches documents in the district solely for the purposes of engaging in discovery in prior litigation. *See Schmitz II*, 376 F.3d at 85 n.6. That issue is also subject to review *de novo*. *See Certain Funds*, 798 F.3d at 117. And once again, the Second Circuit may well conclude that Section 1782's purposes do not require reading the statute to sweep so broadly in these circumstances.

Petitioner claims there is "no caselaw suggesting that it matters *why* the documents are present in the district". (Mot. to Stay Opp'n Br. 7.) But *Schmitz* is that case law. And *Schmitz* left this "difficult question" for another day. *Schmitz II*, 376 F.3d at 85 n.6. Petitioner's next bid is to claim that the "real question here is whether a party can insulate its documents from discovery by giving them to its lawyers, presumably destroying its own copies, and then have its lawyers argue that discovery from them is inappropriate". (Mot. to Stay Opp'n Br. 7-8.) That argument seeks to deflect the Court from the real issue—and is patently absurd and borders on the offensive. Shell did not choose to send its documents to Cravath in New York; Shell was obligated to act under (now-void) orders issued by the district court. (*See, e.g.*, Moskowitz 2/13/17 Decl. Ex. C, Conference Tr., dated Nov. 25, 2002, at 18:14-20.) And Petitioner offers not a shred of evidence for her sensational suggestion that Shell maliciously destroyed its copies. In any event, "documents in the possession of a party's attorney are

7

deemed to be within the party's possession, custody, or control because the party has the legal right to obtain the documents on demand." *Bank of Cyprus*, 2011 WL 223168, at *3 n.1. Petitioner cannot evade the fact that the present appeal squarely implicates the question *Schmitz* reserved.

*Third*, prior to this Court's decision, no court in this District had exercised its discretion to permit discovery from a law firm of a foreign client's documents where that client was the target of the foreign proceedings at issue. (Mot. to Stay Br. 11.) Against the weight of authority, Petitioner clings to the fiction that she is seeking documents from Cravath, not Shell.[4] (Mot. to Stay Opp'n Br. 8.) But this Court recognized that courts, including *Schmitz*, weighing Section 1782's discretionary factors have considered the firm's client the true target of discovery in such cases. (Order at 8.) Petitioner's only answer is to say the Second Circuit does not typically reverse Section 1782 decisions on discretionary grounds and would not do so here. (Mot. to Stay Opp'n Br. 8-9.) But discretion under Section 1782 is "not boundless", *Schmitz*, 376 F.3d at 84, and the Second Circuit is likely to apply *Schmitz*'s reasoning here because Petitioner "for all intents and purposes" seeks discovery from Shell, and Shell is the target of Petitioner's potential Dutch action, *see id.* at 85; *see also Intel Corp. v. Micro Advanced Devices Inc.*, 542 U.S. 241, 264 (2004) (noting that the need for Section 1782 is not apparent where the respondent is an intended party in the foreign action).

---

[4] Petitioner's claim that *Mare Shipping* and *Schmitz* are distinguishable because "the documents were undisputedly within the possession or control of a *current* party to the foreign proceeding" (Mot. to Stay Opp'n Br. 8 (emphasis added)) has no merit. There is no material difference between a "current party" in a foreign proceeding and Shell, the party against whom Petitioner asserts she will file the Dutch lawsuit. And Petitioner's effort to distinguish *In re Application Pursuant to 28 U.S.C. § 1782 of Okean B.V. & Logistic Sol. Int'l to Take Discovery of Chadbourne & Parke LLP*, 60 F. Supp. 3d 419 (S.D.N.Y. 2014), on the facts (Mot. to Stay Opp'n Br. 8) does nothing to undermine that the court exercised its discretion to deny Section 1782 discovery of a foreign client through its U.S. law firm.

Moreover, Petitioner's own declarations and the case law undermine this Court's dispositive conclusion that the documents at issue could not be obtained from Shell. (Order at 9-10.) For one thing, whether Shell maintains copies of these documents in the Netherlands or not, it has control over the files held by Cravath. *See Bank of Cyprus*, 2011 WL 223168, at *3 n.1. For another, Petitioner's contention that the Dutch mechanism for civil discovery is unavailable because "Dutch courts have rejected the use of this procedure before the legal issues are known" and Petitioner cannot easily identify the documents is simply incredible. (1782 Reply Br. 11; *see* Mot. to Stay Opp'n Br. 11.) Petitioner has litigated the relevant legal issues for some 15 years. She actually possessed the documents herself. And her Dutch counsel explains that "[t]he Dutch case of Ms. Kiobel is substantively similar" to the suit she brought in the United States and that a Dutch complaint already has been drafted. (Samkalden 10/4/16 Decl. ¶4; Samkalden 2/16/17 Decl. ¶ 2.) It cannot be that Petitioner remains unable to tell a Dutch court what this case is about and what documents she needs from Shell. It is therefore a reasonable possibility that the Second Circuit will conclude that the Court's weighing of the first discretionary factor was an abuse of discretion.

*Fourth*, the Second Circuit may—in conducting its *de novo* review—disagree that Petitioner has shown that any Dutch proceeding is "within reasonable contemplation". *Intel*, 542 U.S. at 259; *see Certain Funds*, 798 F.3d at 117 (*de novo* review applies). Nearly four years have passed since the Supreme Court dismissed Petitioner's U.S. claims.[5] (Mot. to Stay Br. 12.)

---

[5] Petitioner asserts that Cravath's argument on this point is in tension with its claim that irreparable harm will result should a stay not be granted. (Mot. to Stay Opp'n Br. 9.) It is not. For the purposes of this motion, Cravath assumes that Petitioner will follow through on her proposed course of action, which will result in irreparable harm to Cravath. Petitioner, however, should not be permitted to establish compliance with Section 1782's statutory requirements with self-serving claims about her subjective "reasonable contemplation". *See Certain Funds*, 798 F.3d at 123 ("[T]he applicant must have more than a subjective intent to undertake some legal

9

In all that time, Petitioner has done nothing more than obtain legal aid and retain an attorney who sent "liability letters" in 2013 and claims to have drafted a writ of summons. (*Id*.) The Second Circuit may well decide that Petitioner's allegations are not significantly different from those in *Certain Funds*, where the Second Circuit found that retaining counsel and discussing the possibility of filing suit five years after the underlying events did not satisfy the statute. (Mot. to Stay Br. 12.)[6]

## IV. THE PUBLIC INTEREST CUTS IN FAVOR OF A STAY.

Finally, the public's interest in the fair and predictable administration of Section 1782 far outweighs any interest it may have in a lawsuit that may or may not ever be brought in the Netherlands, concerning alleged events in Nigeria some 20 years ago. Indeed, the Supreme Court dismissed Petitioner's original action precisely because it lacked a meaningful connection to the United States. *See Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1668 (2013) (finding "no indication" that the United States intended to be "a uniquely hospitable forum for the enforcement of international norms" through its courts). And even if Cravath does not ultimately prevail, a modest delay in production implicates no public interest.

---

action, and instead must provide some objective indicium that the action is being contemplated.").

[6] Petitioner incorrectly suggests that this portion of the Court's Order is unlikely to be disturbed on appeal because its "factual" findings are subject to clear error review. (*See* Mot. to Stay Opp'n Br. 5.) That is not the standard that will apply here. The Court's Order merely accepted Petitioner's counsel's representations but did not make any factual findings. (*See, e.g.*, Order 10 (noting that Petitioner has "represented" certain things relating to this factor).) The cases Petitioner cites in support of a clear error standard of review all involved post-trial findings of fact and have no application here. *See Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016) ("[w]hen reviewing a judgment following a bench trial, we review a district court's findings of fact for clear error"); *Krizek v. Cigna Group Ins.*, 345 F.3d 91, 94-95 (2d Cir. 2003) (applying clear error review to post-trial findings).

**CONCLUSION**

For the reasons set forth in Cravath's Motion to Stay the Court's Order and as further set forth above, Cravath respectfully requests that the Court grant a stay of its Order directing Cravath to produce the requested discovery pending appeal.

February 23, 2017

Respectfully submitted,

/s/ Lauren A. Moskowitz
Lauren A. Moskowitz
Member of the Firm

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
lmoskowitz@cravath.com

*Attorneys for Respondent Cravath, Swaine & Moore LLP*