IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PETITION OF ESTHER KIOBEL,

                             Petitioner,

For an Order Granting Leave to Issue Subpoenas to Cravath, Swaine & Moore LLP for Production of Documents Pursuant to 28 U.S.C. § 1782

Case No. 1:16-cv-07992 (AKH)

**MEMORANDUM IN SUPPORT OF CRAVATH, SWAINE & MOORE LLP'S PROPOSED ORDER ON REMAND FROM THE COURT OF APPEALS**

LAUREN A. MOSKOWITZ
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

NEAL KUMAR KATYAL
   *Admitted pro hac vice*
EUGENE A. SOKOLOFF
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004

*Attorneys for Respondent
Cravath, Swaine & Moore LLP*

October 5, 2018

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................3

ARGUMENT ...........................................................................................................................5

    I.    CRAVATH'S PROPOSED ORDER IS FAITHFUL TO THE SECOND CIRCUIT'S MANDATE ...................................................................................5

    II.   KIOBEL'S PROPOSED ORDER WOULD VIOLATE THE MANDATE RULE AND UNNECESSARILY PROLONG THIS LITIGATION ............................................6

        A.    Kiobel is Not Entitled to Section 1782 Discovery Under *Intel* ...............................6

            1.    There is no basis to revisit the Second Circuit's ruling ..............................7

            2.    The mandate rule forecloses Kiobel's bid to re-weigh the *Intel* factors ...................................................................................................8

        B.    The Respect Owed Confidentiality Orders Forecloses Kiobel's Bid to Modify the Underlying Order ...........................................................................9

            1.    The mandate rule bars modification of the confidentiality order ..........................................................................................................10

            2.    Kiobel's proposed order fails to address the costs of disclosure to Shell .......................................................................................12

        C.    Kiobel's Proposed Order Fails to Address the Effect of Altering the Confidentiality Order on Lawyer-Client Relations ...........................................13

CONCLUSION ......................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES:**

*Application of Sarrio, S.A.*,
　119 F.3d 143 (2d Cir. 1997)..................................................................................................1

*Bronx Household of Faith v. Bd. of Educ. of City of New York*,
　855 F. Supp. 2d 44 (S.D.N.Y. 2012).....................................................................................7

*Daimler AG v. Bauman*,
　571 U.S. 117 (2014)..............................................................................................................3

*Ginett v. Comput. Task Grp., Inc.*,
　11 F.3d 359 (2d Cir. 1993)....................................................................................................5

*In re Catalyst Managerial Servs., DMCC*,
　680 F. App'x 37 (2d Cir. 2017) .............................................................................................9

*In re Coudert Bros. LLP*,
　809 F.3d 94 (2d Cir. 2015)........................................................................................... passim

*In re Sanford Fork & Tool Co.*,
　160 U.S. 247 (1895)..............................................................................................................5

*Intel Corp. v. Advanced Micro Devices, Inc.*,
　542 U.S. 241 (2004)..............................................................................................................1

*Kiobel v. Royal Dutch Petroleum Co.*,
　621 F.3d 111 (2d Cir. 2010), *aff'd*, 569 U.S. 108 (2013) .....................................................3

*Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*,
　895 F.3d 238 (2d Cir. 2018)......................................................................................... passim

*Mare Shipping Inc. v. Squire Sanders (US) LLP*,
　574 F. App'x 6 (2d Cir. 2014) ..............................................................................................6

*Mees v. Buiter*,
　793 F.3d 291 (2d Cir. 2015)..................................................................................................7

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
　671 F.3d 261 (2d Cir. 2012)........................................................................................6, 9, 12

*SEC v. TheStreet.com*,
　273 F.3d 222 (2d Cir. 2001)................................................................................................11

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*United States v. Ben Zvi*,
  242 F.3d 89 (2d Cir. 2001) ....................................................................................2, 7, 10, 11

*United States v. Webb*,
  98 F.3d 585 (10th Cir. 1996) ..............................................................................................7

*Upjohn Co. v. United States*,
  49 U.S. 383 (1981) ............................................................................................................14

*Wiwa v. Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000) .................................................................................................3

STATUTE:

28 U.S.C. § 1782 ........................................................................................................... *passim*

**INTRODUCTION**

The Second Circuit held that this Court "abused its discretion in granting Kiobel's petition" for Section 1782 discovery "in light of the *Intel* factors, the respect owed to confidentiality orders, and the concerns for lawyer-client relations raised in *Sarrio*." *Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP* ("*Kiobel II*"), 895 F.3d 238, 248 (2d Cir. 2018) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004); *Application of Sarrio, S.A.*, 119 F.3d 143 (2d Cir. 1997)). The Court of Appeals remanded to permit this Court "to revise its order to conform with [that] opinion." *Id.* This was not, as Kiobel apparently believes, an invitation to re-weigh the *Intel* factors or modify the confidentiality order. Rather, the unanimous opinion makes clear that the only "revision" the court had in mind was the ordinary housekeeping needed when a previously granted petition is reversed. Cravath's proposed order faithfully applies the letter and the spirit of that mandate. Kiobel's counter-proposal sweeps aside the concerns that compelled reversal and promises to put the parties on a needless and expensive path back to the Second Circuit.

*First*, the Second Circuit found that this Court "erred in its analysis and application of the four *Intel* factors" because it failed to give due weight to the fact that Kiobel was "seeking documents from U.S. counsel for [a] foreign company" and "trying to circumvent the Netherlands' more restrictive discovery practices." *Id.* at 245. Kiobel contends that the commencement of her Dutch lawsuit is a "change in circumstances" that eliminates any risk of circumvention. But Kiobel notified the Second Circuit of her lawsuit months before the court heard argument and claimed that "the initiation of proceedings in the Netherlands does *not* change the conditions under which the district court ordered discovery." Mot. for Judicial Notice 1, C.A. Doc. 96-2 (emphasis added). And even if the Dutch litigation was a relevant

1

development, the Court of Appeals concluded that granting the petition was an abuse of discretion "in light of the *Intel* factors" as a whole. *Kiobel II*, 895 F.3d at 248. The mandate rule "precludes relitigation both of matters expressly decided by the appellate court and of issues impliedly resolved by the appellate court." *In re Coudert Bros. LLP*, 809 F.3d 94, 99 (2d Cir. 2015) (internal quotation marks and brackets omitted). It bars Kiobel's bid to re-weigh the *Intel* factors here.

*Second*, the Second Circuit concluded that "[t]o now modify the confidentiality order that Shell and Kiobel agreed to, and thereby provide access to the documents" it covers, "would be perilous for multiple reasons, a feature of this case that makes it extraordinary, and possibly unique." *Kiobel II*, 895 F.3d at 246-247. Incredibly, Kiobel's proposed order would have this Court revisit that conclusion, too. But trial courts must "look to both the specific dictates of the remand order as well as the broader spirit of the mandate" when considering the scope of their discretion on remand. *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (internal quotation marks omitted). The mandate here permits revisions to the order *granting the petition* only; it does not authorize modifying the protective order or contemplate any further proceedings. And the spirit of the court's opinion could hardly be clearer. In any event, Kiobel offers no reason to believe that she could make the "showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need," the Second Circuit emphasized was necessary to overcome the "strong presumption" against modification. *Kiobel II*, 895 F.3d at 247 (internal quotation marks and brackets omitted). Ordering further briefing would simply waste the parties' and this Court's time.

*Third*, the Second Circuit held that "alter[ing]" the protective order "would inhibit foreign companies from producing documents to U.S. law firms, even under a confidentiality

2

order, lest Section 1782 become a workaround to gain discovery." *Id.* "If foreign clients have reason to fear disclosing all pertinent documents to U.S. counsel," the court warned, "the likely results are bad legal advice to the client, and harm to our system of litigation. *Id.* Kiobel's proposed order does not even mention—let alone address—these risks.

## BACKGROUND

In 2002, Kiobel and others brought suit in the Southern District against several of Shell's affiliates, seeking damages for alleged human rights abuses in Nigeria. Although the district court initially concluded that it lacked personal jurisdiction over the defendants, the Second Circuit found general personal jurisdiction under New York's pre-*Daimler AG v. Bauman*, 571 U.S. 117 (2014), "doing business" test. *See Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 92 (2d Cir. 2000). In 2010, the Second Circuit held that the district court lacked subject matter jurisdiction over Kiobel's claims, and the Supreme Court affirmed. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010), *aff'd*, 569 U.S. 108 (2013).

While the case was pending, however, Shell complied with its discovery obligations by turning over a substantial number of documents to its attorneys at Cravath for production to Kiobel. "Shell disclosed the[se] documents under a confidentiality order that expressly barred Kiobel from using the documents in any other litigation." *Kiobel II*, 895 F.3d at 246. The parties agreed that "[a]ny de-designation of confidential documents or modification of the confidentiality order required agreement by the parties to the confidentiality order, or could be ordered by the district court. Cravath attorneys signed the stipulation in their capacity as Shell's counsel." *Id.* at 241.

In October 2016, Kiobel petitioned this Court under 28 U.S.C. § 1782 for permission to subpoena Cravath for any of Shell's previously produced documents in its possession. *See* Pet.,

3

Dkt No. 3.  This Court granted the petition on January 24, 2017.  Dkt. No. 21.  In an effort to ensure continued protection for Shell's documents, this Court compelled Cravath to execute a confidentiality stipulation with Kiobel.  *See id.*; Tr. 32:4-8, 19-22, Dkt. No. 14.  "The parties complied with the court's directive, though Cravath advised that, under the terms of the prior stipulation, it lacked authority to de-designate documents because it was not a party to the original Alien Tort Statute suit, and Shell was not before the court."  *Kiobel II*, 895 F.3d at 242.  Cravath timely appealed and this Court stayed Cravath's obligation to turn over the documents pending the resolution of the appeal.  Dkt. Nos. 22, 29.

       The Second Circuit reversed.  It concluded that, although this Court had jurisdiction to entertain Kiobel's petition, it was an abuse of discretion to grant that petition for three reasons.  *First*, the Court of Appeals held that this Court had "erred in its analysis and application of the four *Intel* factors" by granting the petition in spite of the protective order and Kiobel's concession that she was seeking to avoid the more restrictive rules that apply to discovery in Dutch courts.  *Kiobel II*, 895 F.3d at 245; *see id.* at 246-247.  *Second*, the Court of Appeals found that this Court's "ruling would undermine confidence in protective orders" because it effectively "alter[ed] the confidentiality order without Shell's participation, and without considering the costs of disclosure to Shell," circumstances that "ma[de] this case exceptional, and mandate[]  reversal."  *Id.* at 247.  *Third*, the Court of Appeals found that granting Kiobel discovery "would inhibit foreign companies from producing documents to U.S. law firms," undermining attorney-client communications.  *Id.*  The Court of Appeals remanded to allow this Court "to revise its order to conform with [its] opinion."  *Id.* at 248.  Kiobel's petition for rehearing or rehearing en banc was denied without dissent.

4

Undeterred by the Second Circuit's comprehensive and unequivocal rejection of her petition, Kiobel filed a "notice" in this Court of her intent to "file a brief in support of her application to issue subpoenas" and "a motion to modify the underlying protective order in the case." Dkt. No. 32 at 1. Kiobel claimed that these "submissions w[ould] be narrowly tailored to address the Second Circuit's concerns." *Id.* This Court then directed the parties to engage with each other in an effort to settle on a single proposed order to resolve this case. Dkt. No. 33. Although the parties have engaged and exchanged proposals in accordance with this Court's order, they have been unable to agree on a joint proposal.

## ARGUMENT

District courts are bound to give "full effect" to an appellate court's mandate. *Coudert Bros.*, 809 F.3d at 98 (quoting *Ginett v. Comput. Task Grp., Inc.,* 11 F.3d 359, 360-361 (2d Cir. 1993)). They "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Id.* (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)). That rule requires rejecting Kiobel's proposal and entering the order proposed by Cravath.

### I. CRAVATH'S PROPOSED ORDER IS FAITHFUL TO THE SECOND CIRCUIT'S MANDATE.

The Second Circuit concluded that Kiobel was not entitled to Section 1782 discovery of Shell's documents. *See Kiobel II*, 859 F.3d at 248. It remanded so that this Court could "revise its order" to conform to that decision. *Id.* Cravath's order faithfully effectuates the Second Circuit's mandate. First, the order would vacate this Court's January 24, 2017 order granting Kiobel's petition. *See* Dkt. No. 21. That is the minimum required by the Court of Appeals' decision. Second, the order would vacate the so-ordered confidentiality stipulation this Court

5

directed Cravath to enter with Kiobel. *See* Dkt. No. 20. That stipulation could not replace the original confidentiality order or support granting Kiobel's petition because, as the Second Circuit explained, it gave no rights to Shell and cannot be enforced in Dutch courts. *See Kiobel II*, 859 F.3d at 242-243. There is no reason to leave it in place now. Finally, Cravath's order would fulfill the obvious intent of the mandate by denying Kiobel's petition in full.

The Second Circuit found this case "exceptional," "extraordinary, and possibly unique." *Id.* at 247. It warned that the consequences of granting discovery would not only harm Shell, but would "undermine confidence in protective orders" generally, with serious "unintended consequences" to "our system of litigation." *Id.* The mandate rule forecloses any alternative basis for resuscitating Kiobel's petition. *See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 270-271 (2d Cir. 2012) (per curiam). The Second Circuit's reasoning leaves no room for—and Kiobel has not proposed—any more "closely tailored . . . order" than a straightforward denial. *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) (internal quotation marks omitted).

## II. KIOBEL'S PROPOSED ORDER WOULD VIOLATE THE MANDATE RULE AND UNNECESSARILY PROLONG THIS LITIGATION.

The arguments asserted in Kiobel's proposed order are by turns misguided and misleading. The proposal misreads or ignores the Second Circuit's reasoning; seeks to revisit issues resolved by the court's opinion; and posits as "changed circumstance[s]" facts that were well known to the court before it issued its decision. That will not do.

### A.  Kiobel is Not Entitled to Section 1782 Discovery Under *Intel*.

The Second Circuit held that this Court "erred in its analysis and application of the four *Intel* factors." *Kiobel II*, 895 F.3d at 245. The court pointed out that "the first *Intel* factor counsels against granting a Section 1782 petition seeking documents from U.S. counsel for the

foreign company." *Id.* "Further, under the third *Intel* factor," the court explained, "statements made by Kiobel's counsel demonstrate that Kiobel is trying to circumvent the Netherlands' more restrictive discovery practices, which is why they are seeking to gather discovery from Cravath in the U.S." *Id.* Although the court declined "to adopt supervisory rules," it held that the circumstances here "reinforce[d] [its] conclusion that the district court abused its discretion in granting the petition." *Id.* Kiobel's efforts to revisit that conclusion are unavailing.

### 1. There is no basis to revisit the Second Circuit's ruling.

Kiobel's proposed order claims that the filing of her Dutch complaint is a "changed circumstance" that eliminates the Second Circuit's concern that her petition is a bid to evade more restrictive Dutch discovery rules. That is wrong for several reasons. For one thing, the mandate rule does not permit a district court to revisit an appellate ruling absent "a dramatic change in controlling legal authority" or "significant new evidence that was not earlier obtainable through due diligence but has since come to light." *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 855 F. Supp. 2d 44, 64 (S.D.N.Y. 2012) (quoting *United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996)); *see Ben Zvi*, 242 F.3d at 95 (citing *Webb*).[1] Kiobel does not and cannot contend that anything like that happened here.

For another, Kiobel's characterization of the record is seriously misleading. Kiobel notified the Second Circuit that she had "commence[d] proceedings under Dutch law" in July 2017—months before the case was argued and over a year before it was decided. Mot. for

---

[1] The case Kiobel cites suggests only that a *subsequent* Section 1782 petition may rely on changed circumstances; it says nothing about the scope of a district court's discretion on remand from an order reversing the grant of a petition. *See Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6, 9 (2d Cir. 2014) (summary order) (suggesting that "if plaintiffs make a renewed § 1782 discovery request in the future, the district court presented with the request may then consider whether it is overbroad").

Judicial Notice 1, C.A. Doc. 96-2.  In that same filing, Kiobel asserted that "the initiation of proceedings in the Netherlands does *not* change the conditions under which the district court ordered discovery."  *Id*. (emphasis added).  The Dutch litigation is therefore neither "new" nor a "changed circumstance" in any relevant sense.  The Second Circuit was well aware of it when it concluded—based on Kiobel's own affirmative representation—that the petition was an effort to circumvent Dutch discovery restrictions.  *See Kiobel II*, 895 F.3d 245.  This Court may not revisit that assessment.  *See Coudert Bros.*, 809 F.3d at 98.

Even if this Court ignored the record and treated the June 2017 Dutch writ of summons as a dramatic new development, it would not furnish a basis to disturb the judgment.  The Second Circuit found that this Court erred in its assessment of the third *Intel* factor because "statements made by Kiobel's counsel demonstrate[d] that Kiobel is trying to circumvent the Netherlands' more restrictive discovery practices."  *Kiobel II*, 895 F.3d 245.  Those statements were not limited to the restrictions that apply to pre-filing discovery.  *See id.* at 245 n.3.  To the contrary, the Court of Appeals also highlighted the declaration of Kiobel's Dutch attorney, which explained that, even "[o]nce a lawsuit is pending," the process for obtaining discovery "is time consuming and, in the view of Kiobel's counsel, unnecessary since the pertinent evidence is already available in the U.S."  *Id.* at 242 n.2.  That is presumably why Kiobel told the Second Circuit that "the initiation of proceedings in the Netherlands" changed nothing.  Mot. for Judicial Notice 1, C.A. Doc. 96-2.

### 2. The mandate rule forecloses Kiobel's bid to re-weigh the *Intel* factors.

Kiobel's proposed order goes on to suggest that this Court may re-weigh the *Intel* factors and grant her petition so long as it construes the first and third factors in line with the Second Circuit's ruling.  That ship has sailed.  The question of whether Kiobel is entitled to discovery

under the *Intel* factors was expressly decided by the Court of Appeals; it held that this Court "erred in its analysis and application of the *four Intel* factors." *Kiobel II*, 895 F.3d at 245 (emphasis added). And it concluded that "in light of the *Intel* factors"—among other things—it was an abuse of discretion to grant the petition. *Id.* at 248.

Even if the court did not specifically discuss every factor and consideration, that holding bars Kiobel's proposal. The mandate rule "precludes relitigation both of matters expressly decided by the appellate court and of issues impliedly resolved by the appellate court." *Coudert Bros.*, 809 F.3d at 99 (internal quotation marks and brackets omitted).[2] Here, the express holding and the "the spirit of the mandate" make clear that it was an abuse of discretion to conclude that the *Intel* factors supported discovery. *Parmalat Capital Fin.*, 671 F.3d at 270 (internal quotation marks omitted). This Court may not revisit that determination.

### B. The Respect Owed Confidentiality Orders Forecloses Kiobel's Bid to Modify the Underlying Order.

Setting aside the *Intel* factors, the "respect owed to confidentiality orders" independently bars Kiobel's proposal. *Kiobel II*, 895 F.3d at 248. The Second Circuit held that "[t]o now modify the confidentiality order that Shell and Kiobel agreed to, and thereby provide access to the documents, would be perilous for multiple reasons, a feature of this case that makes it extraordinary, and possibly unique." *Id.* at 246-247. That is no doubt why it confined its remand to "revis[ing]" the order that granted Kiobel's petition only; it did not contemplate further proceedings. And even if the mandate was somehow ambiguous, Kiobel could not possibly make the required "showing of improvidence in the grant of the order or some extraordinary

---

[2] The Court of Appeals also found that this Court had failed to "consider[] the costs of disclosure to Shell"—a consideration that it noted was required in the context of the fourth *Intel* factor. *Kiobel II*, 895 F.3d at 247 (citing *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 39 & n.1 (2d Cir. 2017) (summary order)).

9

circumstance or compelling need" that the Second Circuit emphasized was needed to effect any modification. *Id.* at 247 (internal quotation marks and brackets omitted). Nor does Kiobel's order resolve the court's concern that permitting discovery would leave Shell without protection for its documents.

### 1. The mandate rule bars modification of the confidentiality order.

Kiobel's proposed order would "notify" Shell and invite briefing on the question whether the underlying order that binds Kiobel and Shell should be modified. But nothing in the Second Circuit's decision suggests that the failure to involve Shell as a procedural matter was the only problem that "mandate[d] reversal"—let alone that "notifying" Shell would allow this Court to re-enter the very same order on remand. *Id.* Rather, the Court of Appeals found the modification itself both "perilous" and unwarranted.

"To determine whether an issue remains open for reconsideration on remand," the Second Circuit has directed courts to "look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.' " *Ben Zvi*, 242 F.3d at 95. Both considerations weigh heavily against Kiobel's proposal. The "specific dictates of the remand order" here are narrowly focused. *Id.* If the Second Circuit thought that modifying the underlying confidentiality order was a viable alternative, it would not have limited this Court to "revis[ing]" the order that granted Kiobel's petition. *Kiobel II*, 895 F.3d at 248.

Kiobel suggests that this Court may nevertheless consider modification because the issue was not specifically addressed in the parties' original briefing to this Court. But that was Kiobel's choice. Cravath repeatedly argued that Section 1782 discovery was unwarranted because it sought materials protected by the confidentiality order. If Kiobel thought that she could avoid that obstacle by modification, she should have said so. In any event, the issue was

10

indisputably pressed and passed upon in the Court of Appeals. Where an appellate court "elect[s] to consider a new argument on appeal, on remand the lower court may not ignore [its] ruling on the basis that" the court "relied on a non-cognizable 'new argument.' " *Coudert Bros.*, 809 F.3d at 100.

The parties addressed the strong presumption against modification at length in their appellate briefing. *See* Cravath Br. 51-53, C.A. Doc. 42; Kiobel Br. 47-55, C.A. Doc. 79; Cravath Reply 26-29, C.A. Doc. 86. The Second Circuit considered those arguments and concluded that "[t]o now modify the confidentiality order that Shell and Kiobel agreed to, and thereby provide access to the documents, would be perilous for multiple reasons, a feature of this case that makes it extraordinary, and possibly unique." *Kiobel II*, 895 F.3d at 246-247. At the very least, the "spirit of the mandate" here forecloses Kiobel's proposal. *Ben Zvi*, 242 F.3d at 95 (internal quotation marks omitted).

Even if the issue remained open, entertaining Kiobel's proposal would waste this Court's and the parties' time. Kiobel has never offered any reason to believe that she could overcome the "strong presumption against the modification of a protective order." *Kiobel II*, 895 F.3d at 247 (quoting *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001)). Indeed, Kiobel's principal argument in the Court of Appeals was that the "strong presumption" against modification does not apply here. Kiobel Br. 48-52, C.A. Doc. 79. The Second Circuit obviously disagreed. *Kiobel II*, 895 F.3d at 247. It stressed that courts "should not countenance" modifications "absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *Id.* (internal quotation marks and brackets omitted). There is no reason to think that the Second Circuit would be receptive to Kiobel's arguments that her desire to pursue litigation elsewhere is an "extraordinary circumstance," that

11

"efficiency" qualifies as a "compelling need," or that denying Kiobel's petition because of the confidentiality order would somehow itself establish that the order was "improvidently granted." Kiobel Br. 53-55, C.A. Doc. 79.

### 2. Kiobel's proposed order fails to address the costs of disclosure to Shell.

Even if the mandate did not bar Kiobel's effort to revisit the protective order, her proposal does nothing to address "the costs of disclosure to Shell." *Kiobel II*, 895 F.3d at 247. In particular, the Second Circuit faulted Kiobel for failing to "provide the U.S. courts with assurance that Dutch courts will enforce the protective orders that safeguard the confidentiality of Shell's documents." *Id.* The mandate rule forecloses each of Kiobel's contrary arguments.

Kiobel's proposed order claims that she has "demonstrated" that documents are not "routinely" made public in Dutch proceedings. Even if that were correct, it would be irrelevant. The Second Circuit had the very same evidence before it as this Court did, and it found that Kiobel had not shown that Dutch courts "*will enforce the protective orders* that safeguard the confidentiality of Shell's documents." *Kiobel II*, 895 F.3d at 247 (emphasis added). Whether or not Dutch proceedings are "routinely" public has no bearing on that question. Kiobel may not relitigate the Second Circuit's contrary conclusion. *See Coudert Bros.*, 809 F.3d at 99.

The mandate rule similarly precludes Kiobel's alternative suggestion that a "request" for confidential treatment from the Dutch courts would allay the Second Circuit's concerns. The Court of Appeals observed that a " 'request' [for] confidential treatment for [Shell's] documents in the Netherlands" is not equivalent to a "right to enforce a breach of confidentiality" under an agreement ordered by a U.S. court. *Kiobel II*, 895 F.3d at 242-243. This Court may not enter an

12

order that rests on the opposite conclusion.  *See Coudert Bros.*, 809 F.3d at 99; *Parmalat Capital Fin.*, 671 F.3d at 270-271.

Retreating, Kiobel's proposed order suggests that disclosing Shell's documents in the Dutch litigation would be consistent with the confidentiality order because that order does not apply to documents used "at trial."  That argument is foreclosed by the Second Circuit's conclusion that permitting discovery here *would* "alter the confidentiality order." *Kiobel II*, 895 F.3d at 247.  It is also facially implausible:  "Although Shell produced the documents at issue to its adversaries in the Alien Tort Statute litigation, that disclosure was not 'public' " because the confidentiality order "expressly barred Kiobel from using the documents in *any other litigation*" than the long-dismissed Alien Tort Statute (ATS) suit.  *Id.* at 246 (emphasis added).  No reasonable reading of that restriction could permit the disclosure of covered documents in litigation brought years later in a foreign country.  Rather, the plain text of the agreement makes clear that the parties understood that the materials would be destroyed and never used again once Kiobel's ATS suit was over.  *See, e.g.*, *Wiwa* Confidentiality Order ¶¶ 7, 20-21, Dkt. No. 4-3.

### C. Kiobel's Proposed Order Fails to Address the Effect of Altering the Confidentiality Order on Lawyer-Client Relations.

Even if Kiobel's proposed order made any provision for the burdens of discovery to *Shell*, it does not even mention and would not avoid the broader "unintended consequences" the Second Circuit warned would flow from any effort to "override the confidentiality order." *Kiobel II*, 895 F.3d at 247.  The Court of Appeals explained that granting Kiobel discovery "would undermine confidence in protective orders" and  "would inhibit foreign companies from producing documents to U.S. law firms, even under a confidentiality order, lest Section 1782 become a workaround to gain discovery." *Id.*  That would directly undermine the policy favoring " 'full and frank communication between attorneys and their clients,' which 'promote[s]

13

broader public interests in the observance of law and administration of justice.' " *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "[T]he likely results," the court warned, "are bad legal advice to the client, and harm to our system of litigation." *Id.*; *see also* Br. of N.Y.C. Bar Ass'n, C.A. Doc. 62; Br. of U.S. Chamber, et al., C.A. Doc. 73. Casting aside the narrow constraints of the remand to grant discovery would only exacerbate these pernicious effects and would ultimately invite reversal once again.

## CONCLUSION

For these reasons, the Court should enter Cravath's proposed order vacating this Court's prior orders and denying Kiobel's petition in full.

DATED this 5th day of October, 2018.

                                              Respectfully submitted,

                                              */s/ Neal Kumar Katyal*
                                              Neal Kumar Katyal
                                                 *Admitted pro hac vice*
                                              Eugene A. Sokoloff
                                              HOGAN LOVELLS US LLP
                                              555 Thirteenth Street NW
                                              Washington, DC 20004
                                              (202) 637-5600
                                              neal.katyal@hoganlovells.com
                                              eugene.sokoloff@hoganlovells.com

                                              Lauren A. Moskowitz
                                              CRAVATH, SWAINE & MOORE LLP
                                              Worldwide Plaza
                                              825 Eighth Avenue
                                              New York, NY 10019
                                              (212) 474-1000
                                              lmoskowitz@cravath.com

                                              *Attorneys for Respondent*
                                                 *Cravath, Swaine & Moore LLP*